## DeHAAN *v.* MARVIN.

1. GARNISHMENT—PLAINTIFF'S RECOVERY DEPENDENT UPON PRINCIPAL DEFENDANT'S RIGHT.

    A plaintiff's right to recover in garnishment proceedings is dependent upon the principal defendant's right to recover against the garnishee defendant.

2. INSURANCE—AUTOMOBILES—DELIVERY OF POLICY—PAYMENT OF PREMIUM—CREDIT.

    The delivery of an automobile insurance policy without condition and without exacting payment of the premium in cash extended credit to the insured and put the policy in force as of the date of delivery and remained effective until notice of cancellation was made as authorized by statute (CL 1948, § 522.34).

———————

REFERENCES FOR POINTS IN HEADNOTES

[2] 29 Am Jur, Insurance §§ 153, 155.

[3] 29 Am Jur, Insurance § 285.

[3] Receipt by insured of notice of cancellation sent by insurer by mail as a necessary condition of compliance with a statutory or contractual provision, 123 ALR 1008.

[4] 20 Am Jur, Evidence § 196; 29 Am Jur, Insurance § 1433.

·3. Same—Notice of Cancellation—Receipt by Insured.

Notice of cancellation of an automobile insurance policy, to be effective, must not only be mailed but must be received by the insured, the cancellation being effective as of the date of the receipt (CL 1948, § 522.34).

4. Same—Automobiles—Notice of Cancellation—Presumptions—Evidence.

The presumption that a notice of cancellation of an automobile insurance policy was received by the insured because it had been placed in the mails by the insurer fades away in the light of testimony by the insured that he did not receive the notice of cancellation, thereby raising a question of fact to be determined by the trier of the facts (CL 1948, § 522.34).

5. Same—Tender of Premium—Waiver—Evidence.

Refusal to permit letter from insured's attorney to the insurer, containing a notice of an accident and offer to pay balance due on premium for automobile insurance policy, to be considered in its entirety, constituted error in garnishment proceedings against insurer, where at time of the alleged tender there was no action pending against the insurer, it did not accept the offer and thereby waived the tender.

·6. Garnishment—Principal Defendant as an Adverse Witness for Plaintiff—Statutes.

Refusal to allow plaintiff in garnishment proceedings under automobile insurance policy to call the principal defendant as an adverse witness was not error since the interests of plaintiff and the principal defendant are similar, the principal defendant not being an opposite party within the meaning of the sparingly-applied statute permitting the calling of opposite parties (CL 1948, § 617.66).

Appeal from Kent; Souter (Dale), J. Submitted June 12, 1951. (Docket No. 51, Calendar No. 45,164.) Decided September 5, 1951.

Garnishment by Siebren DeHaan and another against Otto Marvin and another, principal defendants, and Detroit Automobile Inter-Insurance Exchange, garnishee defendant, on insurance policy. Judgment for garnishee defendant. Plaintiffs appeal. Reversed and new trial granted.

*Earl Waring Dunn,* for plaintiffs.

*Allaben, Wiarda, Hayes & Hewitt (Craig E. Davids,* of counsel), for garnishee defendant.

Sharpe, J. As the result of an automobile accident on October 25, 1949, plaintiff Siebren DeHaan recovered judgment in the amount of $18,338.30 and Beatrice DeHaan recovered judgment in the amount of $2,000. Upon failure of defendants Otto Marvin and Donald Marvin to pay the judgments, garnishment proceedings were instituted against the Detroit Automobile Inter-Insurance Exchange as the insurance carrier of Otto Marvin. Disclosure was made denying liability.

The facts necessary to decision are as follows: In March, 1949, defendant Otto Marvin was the owner of an automobile. He talked with a representative of the insurance exchange about liability insurance on his automobile at which time Otto Marvin paid the agent $5. The policy dated March 16, 1949, was issued by the insurance company and delivered by mail to defendant Otto Marvin's home address. Along with the policy the insurer sent a schedule of deferred payments showing the first payment due on April 16, 1949, the second payment due May 16, 1949, the third payment due June 16, 1949, and the final payment due July 16, 1949.

At the time the application for insurance was signed, defendant Otto Marvin was informed that a person does not have a right to buy insurance in the exchange without being a member of the Automobile Club of Michigan. The receipt mailed to defendant Otto Marvin shows $5 paid on his application for membership in the club with a balance of $7 due in 30 days. The payment due on the policy on April 16, 1949, not having been paid, the agent called on Otto Marvin in the latter part of April and informed

him that unless the payments were made very shortly the policy of insurance would be cancelled. None of the payments for the policy were ever paid. On October 25, 1949, defendants were involved in an automobile collision. On November 7, 1949, defendant Otto Marvin through an attorney wrote the insurance company and offered to pay the premiums claimed to be due on the policy. This offer was not accepted by the insurance company. On or about April 30, 1949, a cancellation notice was mailed to Otto Marvin with cancellation date stated to be May 10, 1949. Defendant Otto Marvin testified that he never received the notice.

The policy of insurance contains the following:

"DETROIT AUTOMOBILE INTER-INSURANCE EXCHANGE (AN INSURANCE EXCHANGE HEREIN CALLED 'EXCHANGE') Does hereby agree with the subscriber (herein called 'insured') named in the declarations made a part hereof, in consideration of the premium deposit herein provided and in reliance upon the statements contained in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy: * * *

"CONDITIONS. * * * (6) No action shall lie against the exchange unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy."

The cases were consolidated for trial and on appeal. At the close of plaintiffs' proofs, the following occurred:

"*Mr. Allaben* (Attorney for garnishee defendant): May it please the court, at this time I wish to make a motion for a directed verdict for no cause of action on the grounds that under the undisputed proof in this case there was no insurance in effect at the time of this accident. No payment had been made at any time for any portion of the insurance premium, and it was therefore void *ab initio;* that

the proof is undisputed that the $5 Mr. Marvin paid was for the part payment on a membership in the Automobile Club; and that he signed an application for insurance which provided on its face that there was no payment on the policy being made on the premium for the policy, and that it was to be on a deferred 4-payment plan beginning a month from the date of the application, and Mr. Marvin himself has stated specifically on the stand that he made none of those payments; and therefore, no payment whatsoever was made on this insurance policy."

The trial court reserved decision on the above motion by virtue of authority of the Empson Act* and at the close of all testimony the motion was renewed. In granting the motion the trial court stated:

"The court is granting the motion for directed verdict on the ground, first, primarily, Mr. Marvin never paid a dime for insurance. Even though he was warned his policy would be cancelled, and he stated his wife would send in the money, he never paid a dime for insurance. You can't have your cake and eat it too. If he wanted insurance, he had to pay for it. It is true that he was given credit. The insurance became effective at the time the policy was written and delivered to him upon the instalment payment plan, but to keep the insurance in force, the instalments must be paid under the terms of the policy. That was the consideration for the writing of the insurance, that he would make the payments, which he did not do. The court is granting the motion for directed verdict on the further ground that the law presumes that the notice of cancellation was mailed and received by him based upon the evidence which you have heard, and the only evidence to the contrary is his bald statement, No, he did not receive it. He had everything else. He had saved everything except what had to do with insurance. He brought in the one envelope which he re-

---

* CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1949 Cum Supp § 27.1461 *et seq.*).—Reporter.

ceived his membership in the Triple A Club. He did remember the pink sheet, but he didn't save that. He didn't save anything else. A lot of time has been spent in this case. It seems to me that a lot of time has been unnecessarily spent when the only issue at any time was whether or not he had paid any premiums for this insurance, whether he had bought any insurance, paid any premiums, and also the simple matter of whether notices had been mailed in the usual way. They were matters that could have been covered in a very short period of time.

"So, under the instructions of the court, the motion for directed verdict will be granted, and the clerk will take your verdict."

Plaintiffs appeal and urge that when credit for the payment of premium was extended, the insurer waived any claim that the payment of the premium was a condition to liability attaching; and that the agreement to accept the premium payment in instalments and the delivery of the policy extended the policy coverage to Marvin as of March 16, 1949. Plaintiffs rely upon *American Employers' Liability Insurance Company* v. *Fordyce,* 62 Ark 562 (36 SW 1051, 54 Am St Rep 305), where it is said:

"The delivery of the policy without condition, and without exacting payment of the premium in cash, raised the presumption that a short credit was intended. * * *

"While the insurance company had the right to cancel the policy for the nonpayment of the premium, as per the contract between the parties, it had no power to make this cancellation relate back, and avoid the policy *ab initio.*"

Garnishee defendant urges that there never was a policy of insurance in force between Otto Marvin and defendant insurance company from the beginning because of a total failure of consideration. Garnishee defendant relies upon *Musser* v. *Ricks,*

271 Mich 174, wherein Ricks made application for insurance on February 14, 1934. The policy was delivered 2 weeks later with premium payable in instalments of $8.77 as a down payment and the balance in 5 monthly instalments. The first payment was not made as agreed upon and before any payments were made Ricks was involved in an automobile accident on March 5, 1934. After the accident, Ricks surrendered the policy to the insurance company. In reversing a judgment for plaintiff, we said:

"Plaintiff's right to recover against the garnishee defendant is dependent on the principal defendant's right to so recover. In this garnishment proceeding plaintiff cannot prevail unless at the time the writ of garnishment was served defendant Ricks could have successfully prosecuted a suit on his insurance policy. This he could not have done because when he visited the agent's office on March 8, 1934, he surrendered his policy with the understanding that it was so surrendered for cancellation because of nonpayment of premium. * * *

"Ricks, the insured, has not complained of or sought to revoke or nullify such surrender and cancellation. Whether he did so in consequence of some misunderstanding of his legal rights is not now material. He has never paid or tendered payment of any portion of the premium. Surely under the circumstances he could not rightly claim that his policy was still in force on July 9, 1934, when the writ of garnishment was served. No claim is made that Ricks acted in bad faith or with any fraudulent intent in surrendering his insurance. He simply put himself in the position of an uninsured auto owner."

In *Schaefer* v. *Peninsular Casualty Insurance Company*, 266 Mich 386, the assured failed to pay any part of the premium after delivery of the policy. In reversing a judgment for plaintiff, we said (p 396):

"The insured never paid the premium and never intended to pay. Repeated requests to pay were ignored and, on one occasion, met by a falsehood that a check had been sent. The policy recited an undertaking, in consideration of the payment of the premium. There was no occasion for defendant to declare the stillborn policy dead."

In *Hauser* v. *Michigan Mutual Liability Company,* 276 Mich 624, we held that a personal accident policy combined with insurance against public liability, property damage, collision, et cetera, when delivered took effect according to its terms and became subject to subsequent conditions. In this case the policy contained an express provision covering defaulted payments. The policy also provided that it became effective upon payment of the first monthly instalment. We there said:

"As the contract provided for credit and instalment payments and expressly declared the effect of a payment after default, it appears plain that such provision must govern the case."

In the case at bar the policy was delivered with a schedule of 4 deferred payments, showing the first payment due April 16, 1949, and like payments monthly thereafter. The policy contained no provision requiring payment of the premium in cash as a condition precedent to the effectiveness of the policy. The delivery of the policy without condition and without exacting payment of the premium extended credit to Marvin and put the policy in force. See *Behler* v. *German Mutual Fire Ins. Co.,* 68 Ind 347.

In *American Employers' Liability Insurance Company* v. *Fordyce, supra,* it is said:

"The issuance and delivery of the policy to the assured for a valuable consideration agreed upon and expressed therein, and the acceptance of the policy by the assured, put said policy in force."

In our opinion the policy went into effect upon the delivery to Marvin with its effective date as of March 16, 1949, as the insurance company accepted his promise to pay the premium in instalments as consideration for the risk assumed by the insurance company.

The cases cited by garnishee defendant insurance company are not controlling. In *Schaefer* v. *Peninsular Casualty Insurance Co., supra,* we held that the policy never became effective because there never was an intention to pay any part of the premium. In *Musser* v. *Ricks, supra,* our decision was based upon the fact that the policy had been surrendered before notice of cancellation. In *Hauser* v. *Michigan Mutual Liability Company, supra,* there was an express provision covering defaulted payments.

It is also our opinion that the policy was effective until notice of cancellation, as authorized by statute, was complied with. CL 1948, § 522.34 (Stat Ann 1943 Rev § 24.298), reads as follows:

"No policy of casualty insurance, excepting workmen's compensation, but including all classes of automobile coverage, shall be issued or delivered in this State by any corporation or other insurer authorized to do business in this State for which a premium or advance assessment is charged, unless there shall be contained within such policy a provision whereby the policy shall be cancelled at any time at the request of the insured, in which case the company shall, upon demand and surrender of the policy, refund the excess of paid premium or assessment above the customary short rates for the expired time, and whereby the policy may be cancelled at any time by the company by giving the insured a 5 days' written notice of cancellation with or without tender of the excess of paid premium or assessment above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand and the notice of cancellation shall state that the

said excess premium (if not tendered) will be re-
funded on demand, and furthermore that such can-
cellation shall be without prejudice to any claim
originating prior thereto."

The trial court held that notice of cancellation had
been mailed in the proper manner and form and the
presumption is that Marvin received such notice.
Plaintiffs urge that the trial court was in error in
directing a verdict of no cause of action on the
ground that there was no evidence to the contrary
except the denial of Marvin that he had received the
notice.

In *Galkin* v. *Lincoln Mutual Casualty Company,*
279 Mich 327, we said:

"The following decisions hold that notice of can-
cellation, to be effective, must not only be mailed
but must be received by the insured: *Farnum* v.
*Phoenix Ins. Co.,* 83 Cal 246 (23 P 869, 17 Am St
Rep 233); *American Building Maintenance Co.* v.
*Indemnity Ins. Co. of North America,* 214 Cal 608
(7 P2d 305); *Mullen* v. *Dorchester Mutual Fire Ins.
Co.,* 121 Mass 171; *Protection Life Ins. Co.* v. *Pal-
mer,* 81 Ill 88; *Commercial Union Fire Ins. Co.* v.
*King,* 108 Ark 130 (156 SW 445); *American Fire
Ins. Co.* v. *Brooks,* 83 Md 22 (34 A 373).

" 'A notice of cancellation does not become ef-
fective until it is received, so that where it is mailed
the time of its receipt by the insured is the time
from which the notice must be computed (citing
*Citizens Ins. Co. of Missouri* v. *Henderson Elevator
Co.,* 123 Ky 478 [96 SW 601, 97 SW 810, 124 Am St
Rep 371]; *Crown Point Iron Co.* v. *Aetna Ins. Co.,*
127 NY 608 [28 NE 653, 14 LRA 147])' 14 RCL, p
1009.

"We are not in accord with appellant's contention
that under the terms of its policy mailing notice of
cancellation to the last known address of the insured
in and of itself canceled the policy. Instead, because
of the statutory requirement hereinabove quoted,

cancellation could not be effected by the insurer until notice thereof was received by the insured."

There is a presumption that the notice of cancellation was received by Marvin, but like all presumptions it fades away in the light of the testimony of Marvin that he did not receive the notice of cancellation. In such a case, a question of fact is raised that should be determined by the trier of the facts. The trial court was in error in failing to submit this issue to the jury.

Plaintiffs also urge that the trial court erred in refusing to permit a letter from defendant Otto Marvin's attorney to defendant insurance company under date of November 7, 1949, containing notice of accident and offer to pay balance due on premium to be considered in its entirety. When this letter was offered in evidence, the court restricted its use to that of serving as a notice of accident. Garnishee defendant objected to the introduction of the letter in evidence on the ground that it did not constitute a valid tender of the premium due.

The policy contains the following:

"Conditions * * * (6) No action shall lie against the exchange unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or written agreement of the insured, the claimant and the exchange."

We note that at the time the alleged tender was made there was no action pending against the defendant insurer. The offer was not accepted. We are unable to find any reason for rejection of the tender except that the insurance company considered the policy cancelled. In view of the position taken by the insurance company that the policy had

been cancelled and its failure to answer the letter of November 7, 1949, we conclude that the insurance company in effect rejected the offer to pay the premium. In such case it would have been futile to have attempted to pay the premium in cash. The law does not require a person to do a useless thing. In our opinion the actions of the insurance company constitute a waiver of a tender. The trial court was in error in refusing in evidence that part of the letter relating to payment of the balance on the premium.

In view of the fact that the cause is reversed for a new trial, we deem it expedient to discuss another issue raised in the cause. Plaintiffs urge that the trial court was in error in refusing to allow plaintiffs, upon the trial of the statutory issue of garnishment, to call the defendant Otto Marvin as an adverse witness.

CL 1948, § 617.66 (Stat Ann § 27.915), reads, in part as follows:

"Hereafter in any suit or proceeding in any court of law or equity in this State, either party, if he shall call as a witness in his behalf, the opposite party, employee or agent of said opposite party * * * shall have the right to cross-examine such witness the same as if he were called by the opposite party."

In *Hammond* v. *Hammond,* 234 Mich 444, 456, we said:

"The statute * * * permits the calling of the opposite party for cross-examination, but its permission should be exercised sparingly and to reach relevant facts difficult or incapable of proof otherwise."

As was said in *Musser* v. *Ricks, supra,* "Plaintiff's right to recover against the garnishee defendant is dependent on the principal defendant's right to so re-

cover." See, also, *Brogdon* v. *American Automobile Insurance Co.*, 290 Mich 130.

In our opinion plaintiffs' interests are similar to those of Otto Marvin. Their right to recover is dependent upon the right of Marvin to recover against the garnishee defendant. It follows that the trial court was not in error in refusing to allow the plaintiffs to call Otto Marvin as an adverse witness.

The judgment is reversed and a new trial granted, with costs to plaintiffs as against the garnishee defendant.

Reid, C. J., and Boyles, North, Dethmers, Butzel, Carr, and Bushnell, JJ., concurred.